UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| LESLIE ANNE S., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 3:24-cv-30086-KAR |
| | ) | |
| FRANK BISIGNANO, Commissioner, | ) | |
| Social Security Administration,[1] | ) | |
| | ) | |
| Defendant. | ) | |

MEMORANDUM AND ORDER REGARDING PLAINTIFF'S MOTION FOR JUDGMENT
ON THE PLEADINGS AND DEFENDANT'S MOTION TO AFFIRM THE
COMMISSIONER'S DECISION
(Dkt. Nos. 12 & 19)

ROBERTSON, U.S.M.J.

I.    INTRODUCTION AND PROCEDURAL HISTORY

Leslie Anne S. ("Plaintiff") brings this action pursuant to 42 U.S.C. § 405(g) seeking

review of a final decision of the Commissioner denying her application for Disability Insurance

Benefits ("DIB").  Plaintiff applied for DIB on December 27, 2021 alleging an April 9, 2021

onset of disability due to major depressive disorder, generalized anxiety disorder, ADHD

predominantly inattentive type, gallbladder removal, digestive issues, and gastric sleeve surgery

(Administrative Record "A.R." at 26, 110, 229).[2]  Her application was denied initially (A.R. at

131-32) and on reconsideration (A.R. at 149-51).  She requested a hearing before an

---

[1] Pursuant to Fed. R. Civ. P. 25(d), Frank Bisignano, Commissioner of the Social Security
Administration, is substituted for Martin O'Malley, former Commissioner of the Social Security
Administration.

[2] All citations to "A.R." refer to the administrative record, which appears on the docket of this
case as docket number 9.  The page numbers were assigned by the Social Security
Administration ("SSA") and appear in the lower right-hand corner of each page.

administrative law judge ("ALJ"), and one was held on August 4, 2023 (A.R. at 86-109). On

September 14, 2023, the ALJ issued an unfavorable decision on Plaintiff's claim (A.R. at 26-43).

The Appeals Council denied review on May 6, 2024 (A.R. at 1-7).

Plaintiff seeks remand based on her contention that the ALJ erred in failing to assign

controlling weight to the opinions of her therapist, Melissa Stetson, LMHC. Before the court are

Plaintiff's motion for judgment on the pleadings (Dkt. No. 12) and the Commissioner's motion

to affirm the decision (Dkt. No. 19). The parties have consented to this court's jurisdiction (Dkt.

No. 8). *See* 28 U.S.C. § 636(c); Fed. R. Civ. P. 73. For the reasons set forth below, the court

DENIES Plaintiff's motion and GRANTS the Commissioner's motion.

II.    DISABILITY DETERMINATION

A.    The Legal Standard for Entitlement to DIB

A claimant is disabled under the Act if she "is unable to engage in any substantial gainful

activity by reason of any medically determinable physical or mental impairment which can be

expected to result in death or which has lasted or can be expected to last for a continuous period

of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). A claimant is unable to engage in

any substantial gainful activity when she

> is not only unable to do [her] previous work, but cannot, considering [her] age,
> education, and work experience, engage in any other kind of substantial gainful
> work which exists in the national economy, regardless of whether such work
> exists in the immediate area in which [s]he lives, or whether a specific job
> vacancy exists for [her], or whether [s]he would be hired if [s]he applied for work.

42 U.S.C. § 423(d)(2)(A).

The ALJ evaluates a claimant's impairment under a five-step sequential evaluation

process set forth in the regulations promulgated by the SSA. *See* 20 C.F.R. § 404.1520(a)(4)(i)-

(v). The hearing officer must determine whether: (1) the claimant is engaged in substantial

gainful activity; (2) the claimant suffers from a severe impairment; (3) the impairment meets or equals a listed impairment contained in Appendix 1 to the regulations; (4) the impairment prevents the claimant from performing previous relevant work; and (5) the impairment prevents the claimant from doing any work considering the claimant's age, education, and work experience. *See id; see also Goodermote v. Sec'y of Health & Human Servs.*, 690 F.2d 5, 6-7 (1st Cir. 1982) (describing the five-step process). If the hearing officer determines at any step of the evaluation that the claimant is or is not disabled, the analysis does not continue to the next step. 20 C.F.R. § 404.1520(a)(4).

Before proceeding to steps four and five, the ALJ must assess the claimant's RFC, which the ALJ uses at step four to determine whether the claimant can do past relevant work and at step five to determine if the claimant can adjust to other work. *See id.*

> RFC is what an individual can still do despite his or her limitations. RFC is an administrative assessment of the extent to which an individual's medically determinable impairment(s), including any related symptoms, such as pain, may cause physical or mental limitations or restrictions that may affect his or her capacity to do work-related physical and mental activities.

Social Security Ruling ("SSR") 96-8p, 1996 WL 374184, at *2 (July 2, 1996).

The claimant has the burden of proof through step four of the analysis, including the burden to demonstrate her RFC. *See Flaherty v. Astrue*, Civil Action No. 11-11156-TSH, 2013 WL 4784419, at *8-9 (D. Mass. Sept. 5, 2013) (citing *Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004)). At step five, the Commissioner has the burden of showing the existence of jobs in the national economy that the claimant can perform notwithstanding her restrictions and limitations. *See Goodermote*, 690 F.2d at 7.

    B.    <u>Evaluation of Claims of Mental Impairment</u>

Evaluation of a claim of mental impairment proceeds based on a psychiatric review technique that assesses the degree of functional limitation in four broad functional areas, which include the ability to: (1) understand, remember, or apply information; (2) interact with others; (3) concentrate, persist, or maintain pace; and (4) adapt or manage oneself.  20 C.F.R. § 404.1520a(c)(3).  In rating the degree of limitation, the ALJ uses a five-point scale consisting of: none, mild, moderate, marked, and extreme. 20 C.F.R. § 404.1520a(c)(4).  If the claimant's degrees of limitation are rated as "none" or "mild," the ALJ generally will find that the impairment is not severe.  20 C.F.R. § 404.1520a(d)(1).  The ALJ must include a specific finding as to the degree of limitation in each of the four functional areas in his decision. 20 C.F.R. § 404.1520a(e)(4).

III.    RELEVANT BACKGROUND FACTS[3]

Plaintiff was 40 years old on the date of the hearing in August 2023 (A.R. at 86, 110). She graduated from high school, completed truck driving school, and attended community college (A.R. at 923).  Plaintiff worked as a school bus driver from 2017 to 2021 (A.R. at 91). She stopped working because she cried while driving the bus and felt suffocated by the mask that she wore (A.R. at 384).  Before 2017, she drove a van and worked as a paraprofessional in an after-school program where she helped students with their homework (A.R. at 91-92).  Plaintiff lived alone with her cat (A.R. at 270).  She cared for the cat, prepared meals, and did laundry and household chores (A.R. at 103, 271, 272, 294, 295).

Plaintiff's testimony and medical records evidence depression and anxiety (A.R. at 97). She testified that depression made her feel "completely hopeless" (A.R. at 97).  She did not want

---

[3] Because Plaintiff's challenge to the Commissioner's decision is limited to the ALJ's evaluation of the opinion evidence concerning the effects of her mental health impairments, the discussion of the evidence is limited to that topic.

to get out of bed, shower, or dress when her depression was severe (A.R. at 97, 98). Her anxiety caused her to have panic attacks, cry, feel dizzy, and want to "take off" (A.R. at 97, 101, 105). It took a great effort to leave her house and she left only when necessary, but she regularly drove and sometimes shopped in stores (A.R. at 100, 102-03, 273, 296). She avoided crowds and family gatherings but spent time and communicated with friends and family members, including her nephew, in person, by phone, and by text and e-mail (A.R. at 100, 104, 274, 297).

Although Plaintiff treated with a therapist once a week for depression and anxiety, she had not noticed a significant change in her symptoms (A.R. at 97, 98). She attended a partial hospitalization program via telehealth for about three weeks in September 2021 because her depression and anxiety symptoms were "out of control" (A.R. at 98, 944-1024). The program helped "for a few days" (A.R. at 98).

Plaintiff's PCP prescribed anti-depressant medication but it negatively impacted her appetite and sleep (A.R. at 98). She had difficulty falling asleep because she was constantly "thinking, worrying, [and] stressing" and she woke up during the night (A.R. at 99). She slept about four or five hours each night and felt "drained" in the morning (A.R. at 99).

Plaintiff testified that she was also diagnosed with ADHD that caused difficulty concentrating, focusing, and completing tasks (A.R. at 101-02, 275, 298). She used a calendar, timers, and a journal to remember appointments and medications (A.R. at 102).

IV.    THE ALJ'S DECISION

At the first step in the sequential evaluation, the ALJ found that Plaintiff met the insured status requirements through December 31, 2026 and had not engaged in substantial gainful activity after April 9, 2021, the alleged disability onset date (A.R. at 28-29). At step two, the ALJ found that Plaintiff had the severe impairments of anemia, bilateral hearing loss and

tinnitus, depressive disorder, anxiety disorder, and ADHD (A.R. at 29).  At step three, the ALJ

found that Plaintiff did not have an impairment or combination of impairments that met or

equaled the severity of one of the listed impairments in C.F.R. Part 404, Subpart P, Appendix 1

(A.R. at 35-37).  Addressing the paragraph B criteria, the ALJ found that Plaintiff had mild

limitations in her ability to understand, remember, or apply information, and moderate

limitations in her ability to concentrate, persist, and maintain pace, interact with others, and adapt

or manage herself (A.R. at 36-37).  Before proceeding to steps four and five, the ALJ determined

that, from the alleged onset date to the date last insured, Plaintiff had the RFC to perform a full

range of work at all exertional levels, with the following non-exertional limitations:

> [N]ever climb ladders, ropes, or scaffolds.  No concentrated exposure to hazards
> or vibrations.  No exposure to loud or very loud noise.  Able to use the telephone
> occasionally.  Capable of simple, routine tasks.  No more than occasional contact
> with supervisors, coworkers, and members of the public.  Able to adapt to minor
> changes.  No production pace or quota driven work.

(A.R. at 37).  At step four, the ALJ found that Plaintiff was not able to perform her past relevant

work as a school bus and van driver and childcare attendant (A.R. at 42).  He further found,

taking into account Plaintiff's age, education, work experience, and RFC, and based on the

vocational expert's testimony, that Plaintiff could work as a salvage worker, vehicle cleaner, and

laundry worker (A.R. at 43).  *See* 20 C.F.R. §§ 404.1569, 404.1569a.  The ALJ concluded that

Plaintiff was not disabled during the relevant time period (A.R. at 43).

## V.    STANDARD OF REVIEW

The district court may enter a judgment affirming, modifying, or reversing the final

decision of the Commissioner, with or without remanding for rehearing.  *See* 42 U.S.C. § 405(g).

Judicial review is limited to determining "'whether the [ALJ's] final decision is supported by

substantial evidence and whether the correct legal standard was used.'"  *Coskery v. Berryhill*,

892 F.3d 1, 3 (1st Cir. 2018) (quoting *Seavey v. Barnhart,* 276 F.3d 1, 9 (1st Cir. 2001)).  The

court reviews questions of law *de novo, id.*, but "the ALJ's findings [of fact] shall be conclusive

if they are supported by substantial evidence, and must be upheld 'if a reasonable mind,

reviewing the evidence in the record as a whole, could accept it as adequate to support his

conclusion,' even if the record could also justify a different conclusion."  *Applebee v. Berryhill*,

744 F. App'x 6, 6 (1st Cir. 2018) (per curiam) (quoting *Rodriguez v. Sec'y of Health & Human

Servs.*, 647 F.2d 218, 222-23 (1st Cir. 1981)).  "Substantial-evidence review is more deferential

than it might sound to the lay ear: though certainly 'more than a scintilla' of evidence is required

to meet the benchmark, a preponderance of evidence is not."  *Purdy v. Berryhill*, 887 F.3d 7, 13

(1st Cir. 2018) (quoting *Bath Iron Works Corp. v. U.S. Dep't of Labor*, 336 F.3d 51, 56 (1st Cir.

2003) (internal quotation marks omitted)).  In applying the substantial evidence standard, the

court must be mindful that it is the province of the ALJ, and not the courts, to determine issues of

credibility, resolve conflicts in the evidence, and draw conclusions from such evidence.  *See

Applebee*, 744 F. App'x at 6.  That said, the ALJ may not ignore evidence, misapply the law, or

judge matters entrusted to experts.  *See Nguyen v. Chater*, 172 F.3d 31, 35 (1st Cir. 1999) (per

curiam).

VI.    ANALYSIS

The opinions of the state agency consultants and of Plaintiff's therapist were similar with

respect to Plaintiff's capacity to understand and remember, interact with the public, co-workers,

and supervisors, and to adapt to changes in the workplace (A.R. at 37, 39, 115-17, 126-28, 632-

34, 1146-47), and Plaintiff does not contend that the RFC failed to accommodate her limitations

in these functional areas.  Plaintiff takes issue with so much of the RFC as addressed her ability

to sustain concentration, persistence and attendance during an 8-hour workday and a 40-hour

work week.  Relying on a superseded regulation, 20 C.F.R. § 404.1527(d)(2), Plaintiff argues

that the ALJ erred by failing to give controlling weight to Ms. Stetson's opinions about

Plaintiff's limited ability to sustain concentration, persistence, and attendance and that remand is

required because the RFC was not supported by substantial evidence (Dkt. No. 13 at 8-18).

However,

> [f]or applications like this one, filed on or after March 27, 2017, the SSA has
> fundamentally changed how adjudicators assess opinion evidence.  The familiar
> and longstanding requirements – that adjudicators must assign "controlling
> weight" to a well-supported treating source's medical opinion that is consistent
> with other evidence, and, if controlling weight is not given, must state the specific
> weight that is assigned – are gone."  20 C.F.R. § 404.1520c(a).  Instead,
> adjudicators "will not defer or give any specific evidentiary weight, including
> controlling weight, to any medical opinion(s) or prior administrative medical
> finding(s), including those from [a claimant's] medical sources."  *Id.*  Rather, an
> ALJ must consider the persuasiveness of all medical opinions in the case record.
> *See* 20 C.F.R. § 404.1520c.

*Andrea T. v. Saul*, C.A. No. 19-505WES, 2020 WL 2115898, at *5 (D.R.I. May 4, 2020).  *See*

*also Devine v. Kijakazi*, 627 F. Supp. 3d 10, 23 (D. Mass. 2022) (the court rejected the plaintiff's

contention that the ALJ was required to give controlling weight to the treating physician's

opinions because of the change in SSA regulations).

At this time, the most important factors an adjudicator must consider when assessing an

opinion's persuasiveness are supportability and consistency.  20 C.F.R. § 404.1520c(b)(2).

"[T]hese are usually the only factors the ALJ is required to articulate."  *Andrea T.,* 2020 WL

2115898, at *5.  As regards supportability, "[t]he more relevant the objective medical evidence

and supporting explanations presented by a medical source are to support his or her medical

opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions

or prior administrative medical finding(s) will be."  20 C.F.R. § 404.1520c(c)(1).  As regards

consistency, "[t]he more consistent a medical opinion(s) or prior administrative medical

finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." 20 C.F.R. § 404.1520c(c)(2); *Devine*, 627 F. Supp. 3d at 23.  Other factors that may be weighed include the nature and duration of the medical source's relationship with the claimant and his or her specialization.  20 C.F.R. § 404.1520c(c)(3)-(4).  "A medical opinion without supporting evidence, or one that is inconsistent with evidence from other sources, [is] not . . . persuasive regardless of who made the medical opinion."  82 Fed. Reg. at 5854.  For the reasons set forth below, the court finds that the ALJ adequately explained her reasons for assigning little weight to Ms. Stetson's opinions and that the reasons were supported by substantial evidence.

      A.    <u>Mental Residual Functional Capacity Assessment</u>

On December 5, 2022, Ms. Stetson completed a Mental Residual Functional Capacity Assessment ("the MFRC"), which evaluated Plaintiff's capacity to function in a work setting for forty hours per week.  Ms. Stetson reported that she began treating Plaintiff on June 28, 2021 and had seen her on a weekly basis.  She diagnosed major depressive disorder, unspecified anxiety disorder, and ADHD and described Plaintiff's prognosis as poor.  Ms. Stetson opined that Plaintiff was extremely limited in her ability to maintain attention and concentration for extended periods, and to perform activities within a schedule, maintain regular attendance, and be punctual within normal tolerances, and that she had a marked limitation in her ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number of and length of rest periods. Ms. Stetson opined that Plaintiff's impairment would substantially interfere with her ability to work on a regular and sustained basis at least 20% of the time and would cause her to miss two to three days of work each month.  Ms. Stetson explained her conclusion that her client's mental

impairments would prevent her from working by stating that Plaintiff had been experiencing mental health problems that interfered with her daily functioning, social functioning, and self-care (A.R. at 631-34).

After thoroughly reviewing Ms. Stetson's treatment records, which spanned two years from June 28, 2021 to June 27, 2023, as well as the other evidence, the ALJ found that Ms. Stetson's opinions in the MFRC were not generally persuasive (A.R. at 29-35, 38-39, 41). Plaintiff argues that the ALJ's assessment was erroneous because he cherry picked medical evidence and she points to portions of Ms. Stetson's treatment notes, including mental status exam results and diagnoses, that she argues support Ms. Stetson's opinion (Dkt. No. 13 at 10-15). "While such evidence might be adequate to demonstrate that the ALJ could have reached other, supportable conclusions, it does not demonstrate that the ALJ's assessment of this evidence was unreasonable." *Hodgson v. Berryhill*, Case No. 18-cv-87-PB, 2018 WL 7504073, at *3 (D.N.H. Oct. 29, 2018), *rec. adopted*, 2019 WL 1015243 (D.N.H. Mar. 4, 2019). "The mere fact that a claimant can point to evidence of record supporting a different conclusion does not, in itself, warrant remand." *Malaney v. Berryhill*, No. 2:16-cv-00404-GZS, 2017 WL 2537226, at *2 (D. Me. June 11, 2017), *rec. adopted*, 2017 WL 2963371 (D. Me. July 11, 2017), *aff'd*, No. 17-1889, 2019 WL 2222474 (1st Cir. May 15, 2019).

The ALJ's primary reason for his negative assessment of the MFRC was that it was not adequately supported by Ms. Stetson's treatment notes, which, according to the ALJ, did not reflect these extreme limitations. This finding is consistent with the record. To the extent the treatment notes address functional limitations, they reflect that Ms. Stetson generally observed that Plaintiff's appearance and grooming were appropriate; her behavior was cooperative; her speech was normal in rate, amplitude and prosody; her thought process was often logical,

10

although it was sometimes noted to be tangential and disorganized, or logical and tangential. Ms. Stetson consistently described Plaintiff as alert, oriented times four, with intact recent and remote memory, attention and concentration, and language (A.R. at 321-22, 324-25, 345-46, 348-49, 353-55, 364, 370-71, 379-80, 387, 686-87, 689-90, 698-99, 701-02, 711-12, 731-32, 737-38, 757-59, 761-62, 798-99, 1057-58, 1070, 1076-77, 1082-83, 1090-91, 1095, 1102-03, 1122-23, 1138-39).  The ALJ acknowledged that the record showed that Plaintiff could be significantly symptomatic, but only at times (A.R. at 38).  He was entitled to rely on Ms. Stetson's regular observations, made over a two-year period, of Plaintiff's intact concentration, memory, and attention as a basis for declining to accept Ms. Stetson's opinion that Plaintiff had extreme limitations in her ability to maintain attention and concentration for an extended period, and on the absence in the records of findings that would support an extreme limitation on Plaintiff's ability to maintain a schedule or regular attendance.  Further, as the ALJ noted, while Ms. Stetson opined that Plaintiff's mental health problems would interfere with Plaintiff's daily functioning, social functioning, and self-care, Ms. Stetson had consistently represented in her treatment notes that Plaintiff's appearance and grooming were appropriate (A.R. at 41) and that Plaintiff reported social contact with strangers initiated through dating sites and numerous interactions with family members and others (A.R. at 39, 323, 326, 329, 341, 344, 347, 350, 353, 697, 720, 751, 766, 791, 794, 1109, 1112, 1116).  In his analysis, the ALJ accurately summarized Ms. Stetson's opinions, which he found did not include specific references or examples from the treatment notes to support the opinions.  His summary of the treatment notes was equally accurate (A.R. at 29-31, 32-33, 34, 41).  The ALJ more than adequately addressed the supportability of the MFRC.  *See, e.g., Perrino v. Kijakazi*, Civil Action No. 21-cv-11267-ADB, 2023 WL 2743370, at *8 (D. Mass. Mar. 31, 2023).

As to the consistency criterion, the court is skeptical that the ALJ's observation that Ms. Stetson's opinions in the MFRC were internally inconsistent is supported by substantial evidence or satisfies his obligation to address this criterion.  The court is aware of no reason why an employer would not characterize two to three unexcused absences per month as an extreme and, indeed, unacceptable, limitation on an employee's ability to work.  Further the consistency criterion generally is aimed at comparing the opinion or finding under consideration with evidence from *other* medical and nonmedical sources, which the ALJ did not do, *see, e.g., Nicole C. v. Saul*, C.A. No. 19-127JJM, 2020 WL 57727, at *4 (D.R.I. Jan. 6, 2020) (noting that, in assigning weight to a medical opinion, an adjudicator should consider, *inter alia*, how consistent the opinion or finding is with other evidence in the record), although there is caselaw holding that an ALJ adequately evaluates consistency when the ALJ considers an opinion's consistency with the provider's own treatment records and other record evidence.  *See Thorley v. O'Malley*, Case No. 22-cv-10884-DJC, 2024 WL 1333511, at *10 (D. Mass. Mar. 28, 2024) (citing *Perrino*, 2023 WL 2743370, at *8).

Nonetheless, read as a whole, in addition to relying on some inconsistencies between Ms. Stetson's treatment notes and the functional limitations in the MFRC, the ALJ's decision, read as a whole, adequately addresses whether the limitations in the MFRC were consistent with information and findings from other sources.  *See Nicole C.*, 2020 WL 57727 at *7 (holding that the court should read an ALJ's decision as a whole for purposes of determining whether the ALJ adequately addressed the consistency issue).  Here, the ALJ addressed the relatively limited record evidence bearing on Plaintiff's limitations arising from her mental health impairments when he addressed the paragraph B criteria (A.R. at 35-36).  The ALJ noted that, while Dr. Zera recorded testing scores consistent with ADHD, her results showed that Plaintiff had average to

above average functioning in all areas with the exception of working memory, which she found

to be below average (A.R. at 36, 931).  The ALJ acknowledged that Dr. Zera's test results

concerning Plaintiff's working memory were consistent with Ms. Stetson's observations of

tangential thinking and, taken together, these observations established that Plaintiff had

limitations in her ability to concentrate, persist, and maintain pace.  His conclusion that the

limitation was moderate rather than marked or extreme rested significantly on Ms. Stetson's

repeated findings in her treatment records that Plaintiff's memory, attention, and concentration

were intact (A.R. at 36).  Thus, the ALJ appropriately reconciled and relied on consistent

evidence from Dr. Zera and Ms. Stetson (and other sources) in his assessment of Plaintiff's

ability to sustain concentration and pace for extended periods and to adhere to a work schedule

(A.R. at 41).  *See Wiggin v. Kijakazi*, Civil No. 23-cv-30-JL, 2023 WL 4550339, at *3 (D.N.H.

July 14, 2023) (holding that the ALJ appropriately relied on consistency in opinions from

different sources in making a determination about a claimant's functional limitations).

      B.      Ms. Stetson's August 2, 2023 Opinion Letter

      The ALJ's assessment of Ms. Stetson's August 2, 2023 letter ("Letter") was similar to his

assessment of the MFRC.  The letter summarized Plaintiff's history prior to and during her

treatment with Ms. Stetson, referred to Dr. Zera's evaluation, an assessment for PTSD, Plaintiff's

recent report about the severity and frequency of her symptoms of depression, her diagnoses, her

lack of success with anti-depressants, and her challenges with executive functioning and anxiety.

The letter closed with Ms. Stetson's opinion that it would be incredibly difficult for Plaintiff to

manage a job at this point in her life (A.R. at 1146-47).  The ALJ found "little persuasiveness" in

the Letter (A.R. at 41).

While acknowledging that anxiety, tangential thinking, and rumination were documented in Ms. Stetson's treatment notes, the ALJ rejected the opinion in the Letter on the grounds that the treatment notes did not reflect the significant degree of psychomotor agitation described in the Letter; that, in stating that Plaintiff avoided social engagement, the Letter ignored the many references in the treatment notes to social engagement with others, including through a dating site; and that the Letter failed to explain Ms. Stetson's consistent observations of intact memory and concentration throughout the treating relationship (A.R. at 41-42, 321-22, 323, 324-25, 326, 329, 341, 344, 345-46, 347, 348-49, 350, 353-55, 364, 370-71, 379-80, 387, 686-87, 689-90, 697, 698-99, 701-02, 711-12, 720, 731-32, 737-38, 751, 757-59, 761-62, 766, 791, 794, 798-99, 1057-58, 1070, 1076-77, 1082-83, 1090-91, 1095, 1102-03, 1109, 1112, 1116, 1122-23, 1138-39).  Finally, the ALJ addressed consistency – admittedly in minimal fashion – by noting that overall, the Letter did not provide sufficient connection to the totality of the evidence as it related to Plaintiff's functioning (A.R.  at 42).  The ALJ adequately addressed supportability and consistency in connection with his rejection of the opinions in the Letter.  *See Perrino*, 2023 WL 2743370, at *8.  The ALJ further – and properly – relied on Ms. Stetson's failure to address Plaintiff's regular marijuana use and its potential impact on Plaintiff's cognitive and emotional functioning as a reason for rejecting the opinions in the Letter (A.R. at 42, 341, 369, 372, 445, 458, 784, 822, 846, 861, 898, 901, 932, 1121).  *See Viveiros v. Berryhill,* Civil Action No. 1:15-cv-13100-ADB, 2018 WL 3057730, at *9 (D. Mass. June 20, 2018) (the claimant's admitted use of marijuana, which acts as a depressant, supported the ALJ's explanation for giving limited weight to treating care provider opinions concerning the claimant's mental limitations).

Plaintiff's contention that the ALJ erred in relying on Plaintiff's use of a dating website is unpersuasive (Dkt. No. 13 at 17).  The ALJ alluded to Ms. Stetson's failure to account for

Plaintiff's engagement with others, including but not limited to, Plaintiff's use of a dating

website (A.R. at 41). As the ALJ observed, Ms. Stetson's treatment notes indicated that, in

addition to meeting people through the dating website, Plaintiff discussed her post-February

2022 relationships and interactions with other acquaintances and family members (A.R. at 41,

697, 720, 751, 766, 791, 794, 1109, 1112, 1116).

In summary, contrary to Plaintiff's contention, the applicable SSA regulations did not

require the ALJ to give controlling weight to opinion evidence from a treating therapist, and the

ALJ's assessment of the supportability and consistency of those opinions is supported by and

consistent with the record evidence, which the ALJ carefully reviewed. *See Christopher J.G. v.

Saul*, No. 2:19-cv-00562-GZS, 2020 WL 6938811, at * 3 (D. Me. Nov. 25, 2020), *rec. adopted,*

2020 WL 7265846 (D. Me. Dec. 10, 2020).

C.    <u>The RFC was supported by substantial evidence</u>.

The ALJ substantially relied on the opinions of state agency consultants Joanne Coyle,

Ph.D, and Karla Delcour, Ph.D. in formulating the RFC (A.R. at 37, 39, 40). "'[A]n ALJ can

rely exclusively on the assessments of non-testifying, non-examining' medical sources in

adjudicating a claimant's RFC, and conflicts between those assessments and other medical

testimony 'are for the ALJ to resolve.'" *Duguay v. Colvin*, Civil No. 13-cv-273-JL, 2014 WL

4922983, at *4 (D.N.H. Sept. 30, 2014) (quoting *Morin v. Astrue*, Civil No. 10-cv-159-JL, 2011

WL 2200758, at *3 (D.N.H. June 6, 2011)). Plaintiff has not pointed to any evidence that

"meaningfully undermines" the ALJ's reliance on the state agency consultants' opinions. *Id.*

The consultants found that Plaintiff had moderate limitations in her ability to carry out

detailed instructions, maintain concentration for extended periods, perform activities within a

schedule, maintain regular attendance, be punctual within customary tolerances, complete a

normal workday and workweek without interruptions from psychologically based symptoms, and

perform at a constant pace without an unreasonable number and length of rest periods, but

opined that Plaintiff was able to sustain attention/concentration for simple and multistep tasks

and maintain effort for two hour periods over the course of an 8 hour work day and standard

work week in a setting permissive of self-pacing (A.R. at 115-17, 126-28).

> The [RFC's] limitation to simple routine tasks with no production or pace quota
> driven work covers a wide swath of [Plaintiff's] symptoms.  [Plaintiff's] issues
> with focus due to tangential thinking from her ADHD, depressive ruminations,
> and anxiety make the limitation appropriate.  More complicated and detailed tasks
> would likely overwhelm [Plaintiff's] depression, anxiety, and ADHD by
> triggering low self-esteem, stress, and difficulties with memory.  Strict production
> requirements would aggravate the anxiety and depression leading to an episode of
> "shut down" or severe anxiety triggering a panic attack.

(A.R. at 39).  "Plaintiff has not explained or demonstrated through evidence of record how her

symptoms warranted the imposition of further functional limitations than those found by the ALJ

in the RFC."  *Lianabel G.N. v. Comm'r of Soc. Sec.*, Civil No. 24-1016 (GLS), 2025 WL

957732, at *5 (D.P.R. Mar. 31, 2025).

The ALJ's conclusions about the extent of Plaintiff's functional limitations were

supported by the record as a whole, including Ms. Stetson's consistent findings that Plaintiff's

attention, concentration, memory, and judgment were intact during two years of treatment.  *See*

*Jose M. v. O'Malley*, C.A. No. 23-319MSM, 2024 WL 3886749, at *2 (D.R.I. Aug. 20, 2024),

*rec. adopted,* 2024 WL 4063770 (D.R.I. Sept. 5, 2024) ("The determination of substantiality is

based upon an evaluation of the record as a whole.").  At the conclusion of Plaintiff's three-week

outpatient hospital program on September 20, 2021, Linda Gourlay, NP, noted that Plaintiff's

memory, judgment, and insight were intact, and her thought processes were goal-directed (A.R.

at 944).  Plaintiff reported that she benefitted from the group therapy sessions (A.R. at 944).  Dr.

Carnes, who assessed Plaintiff for the Massachusetts Rehabilitation Commission in May 2022,

indicated that Plaintiff maintained appropriate eye contact, was cooperative, and presented with fair judgment and insight. She scored 29/30 on the Mini Mental Status Examination (A.R. at 396). On February 22, 2023, Dr. Zera's testing showed that Plaintiff had average intelligence and a strong memory for words although her memory for numbers and visual-spatial tasks was weaker (A.R. at 931-32). In a report on Plaintiff's June 21, 2023 appointment to address psychiatric medication, licensed social worker C. Baxter Chandler of Westfield Integrated Behavioral Health found that Plaintiff's judgment, insight, memory, attention, and concentration were intact (A.R. at 1045, 1050-51). Plaintiff's ENT treatment provider and her PCP noted Plaintiff's normal mood and affect during office visits (A.R. at 581, 584, 666). She was "not noted as acutely anxious, distracted/tangential, or with other significant psychological factors" during her visits to the Noble Hospital Emergency Department for syncopal episodes (A.R. at 39, 400-567). Plaintiff lived alone, prepared her own meals, did household chores, drove, shopped, interacted with acquaintances and family members, initiated new social connections, and cared for her cat (A.R. at 270-74, 293-97, 323, 326, 329, 341, 344, 347, 350, 353, 697, 720, 751, 766, 791, 794, 1109, 1112, 1116). Because the RFC was supported by the opinions of state agency consultants about Plaintiff's ability to concentrate and persist and was amply supported by other record evidence, there is no basis for reversing the ALJ's decision. *See Chen v. Holder,* 703 F.3d 17, 21 (1st Cir. 2012) (reversal is appropriate under a substantial evidence standard "only if the record is such as to compel a reasonable factfinder to reach a contrary determination.").

VII.    CONCLUSION

For the foregoing reasons, Plaintiff's motion for judgment on the pleadings (Dkt. No. 12) is DENIED and the Commissioner's motion to affirm the decision (Dkt. No. 19) is GRANTED. The Clerk is directed to close the case on the court's docket.

It is so ordered.

Date:  July 15, 2025                                    Katherine A. Robertson
                                                       KATHERINE A. ROBERTSON
                                                       U.S. MAGISTRATE JUDGE